Cassie Springer-Sullivan - CA STATE BAR NO. 221506
Michelle L. Roberts - CA STATE BAR NO. 239092
SPRINGER-SULLIVAN & ROBERTS LLP
410 - 12th Street, Suite 325
Oakland, CA  94607
Telephone: (510) 992-6130
Facsimile: (510) 280-7564
E-mail: css@ssrlawgroup.com
mlr@ssrlawgroup.com

Attorneys for Plaintiff
Socorro Rios

Michele Ballard Miller (SBN 104198)
  mbm@millerlawgroup.com
Katherine L. Kettler (SBN 231586)
  klk@millerlawgroup.com
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendant
AT&T UMBRELLA BENEFIT
PLAN NO. 1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOCORRO RIOS,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T UMBRELLA BENEFIT PLAN NO. 1,<br><br>    Defendant. | Case No.: C 08-01000 CW<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT**<br><br>Date:         June 10, 2008<br>Time:        2:00 p.m.<br>Courtroom:  2<br><br>Complaint filed: February 19, 2008 |

Pursuant to the "Standing Order for All Judges of the Northern District of California" issued on March 1, 2007, the parties to the above-entitled action jointly submit this Joint

1
**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT**
Case No. C 08-01000 CW

Case Management Statement, and request that the Court adopt it as its Case Management Order in this case.

1. Jurisdiction and Service:

Plaintiff Socorro Rios ("Plaintiff") is seeking declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). There is no dispute that the Court has jurisdiction over this matter pursuant to ERISA §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331. Defendant AT&T Umbrella Benefit Plan No. 1 ("Defendant" or "the Plan") has no counterclaims pending. All parties have been served and no dispute exists regarding venue.

2. Facts:

From September 1988 to January 2006, Plaintiff worked for Pacific Bell Directory as a customer service representative. She earned approximately $24 per hour. In 2001 and 2002, Plaintiff underwent arthroscopic knee surgeries. Plaintiff alleges that by late 2005 she began experiencing increasing levels of pain due to severe osteoarthritic degeneration in both knees.

On January 18, 2006, Plaintiff stopped working due to what she alleges as intolerable pain, numbness, swelling, and locking of both knees while at work. Plaintiff applied for short-term disability benefits under the defendant Plan. By letter dated February 3, 2006, the Claims Administrator for Defendant Plan, Sedgwick Claims Management Benefits Services, Inc. ("Sedgwick"), approved Plaintiff's claim for short-term disability benefits from January 25, 2006 through February 8, 2006. By letter dated February 20, 2006, Sedgwick terminated Plaintiff's benefits effective February 9, 2006, stating that Plaintiff's treating physician did not document observable findings that support functional deficits to a degree in which Plaintiff would be unable to perform her job duties. The letter did not address why Plaintiff was entitled to benefits until February 8, 2006, but not thereafter.

By letter dated April 3, 2006, Plaintiff appealed the decision to terminate her short-term disability benefits. On April 4, 2008, Plaintiff underwent a total right knee replacement surgery. On appeal, Sedgwick sought an independent medical review, and obtained reports from Board-certified Drs. Robert Y. Pick and Saad M. Al-Shathir through Network Medical Review (NMR). In their reports, these physician advisors concluded that Plaintiff was not disabled between February 9, 2006 to April 3, 2006, or from May 31, 2006 forward. In his report, Dr. Pick did not address why Ms. Rios was not disabled either before or after that time period.

By letter dated June 1, 2006, Sedgwick upheld the decision to terminate Plaintiff's claim for short-term disability benefits. Sedgwick noted that Plaintiff was disabled from April 4, 2006 to May 30, 2006, but stated that because Plaintiff remained off work for a period of more than 30 days after denial of Plaintiff's short term disability benefits claim, Plaintiff was no longer considered an active employee and no longer met the dentition of "Eligible Employee" under the Pacific Telesis Group Comprehensive Disability Benefits Plan. Plaintiff attempted to provide Sedgwick with additional medical information on the next day but Sedgwick informed Plaintiff by letter dated June 6, 2006 that the determination to uphold the denial of short term disability benefits to Plaintiff was final. Sedgwick did not consider the additional medical information

*Principal Factual Issues in Dispute:*

    I.     Whether Plaintiff had a medical condition which rendered her disabled.

    II.    Whether Plaintiff is entitled to disability benefits under the Plan from February 9, 2006 to January 17, 2007.

3. <u>Legal Issues:</u>

    I.     Under an abuse of discretion review, what level of deference applies under *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc).

    II.    Whether the Plan abused its discretion as plan administrator.

    III.    Whether and to what extent Plaintiff has a right to discovery.

    IV.    Whether Plaintiff is entitled to benefits under the Plan and, if so, in what amount.

    V.    Whether Plaintiff is entitled to attorneys' fees, and if so, in what amount.

4. <u>Motions:</u>

There are no pending motions. The parties anticipate filing cross-motions for summary judgment.

5. <u>Amendment of Pleadings:</u>

Pursuant to a stipulation entered into by the parties, Defendant filed an Amended Answer on June 3, 2008. No further amendments are expected.

6. <u>Evidence Preservation:</u>

The parties will preserve all documents and electronically stored information that may be relevant to the standard of review or to the merits.

7. <u>Disclosures:</u>

The parties intend to exchange initial disclosures pursuant to Fed. R. Civ. P. 26 by June 3, 2008.

8. <u>Discovery:</u>

<u>Plaintiff's Position</u>

Plaintiff intends to conduct discovery regarding the standard of review, as permitted by *Welch v. Metropolitan Life Ins. Co.* and *Abatie v. Alta Health & Life Ins. Co.*, going to whether the Plan committed procedural irregularities or administered Ms. Rios' claim under a conflict of interest. *Abatie*, 458 F.3d at 969 n.7; *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 949-50 (9th Cir. 2007). Specifically, this will include, without being necessarily limited to, the following: (1) the financial relationship between the Plan and the

third-party administrator, Sedgwick CMS; (2) evidence of personal animus against or differential treatment of Ms. Rios; (3) procedural irregularities in handling Plaintiff's claim; and (4) any evidence "that [the Plan] used truly independent medical examiners or a neutral, independent review process; that its employees do not have incentives to deny claims; that its interpretations of the plan have been consistent among patients; or that it has minimized any potential financial gain through structure of its business," *Abatie*, 458 F.3d at 969 n. 7. The *Abatie* court has confirmed that evidence outside of the administrative record should be considered in assessing the standard of review:

> We have held that the court may consider evidence beyond that contained in the administrative record that was before the plan administrator, to determine whether a conflict of interest exists that would affect the appropriate level of judicial scrutiny. *See Tremain,* 196 F.3d at 976-77 (holding that a court may consider extra-record evidence to determine whether the administrator was plagued by a conflict of interest). *Abatie*, 458 F.3d at 970 (9th Cir. 2006). Since *Abatie*, many courts have confirmed that discovery going to the conflict of interest is permissible. *See Liu v. Standard Ins. Co.*, 457 F.Supp.2d 1030, 1038 (C.D. Cal. 2006) (permitting depositions of the medical reviewers); *Baldoni v. Unumprovident, Illinois Tool Works, Inc.*, 2007 WL 649295, *6 (D. Or. Feb. 26, 2007); *Linich v. Broadspire Services, Inc.*, 2007 WL 841509, *6 (D. Ariz. Mar. 16, 2007) (holding that the plaintiff was entitled to take discovery going to the conflict of interest because "[t]he Ninth Circuit's recent ruling in *Abatie* also changes Plaintiff's right to seek discovery regarding the Plan Administrator's conflict of interest."); *McCurdy v. Metro. Life Ins. Co.*, 2007 WL 915177, *5 (E.D. Cal. Mar. 23, 2007) (permitting discovery going to, *inter alia*, Defendant's "claim and procedural manuals, guidelines, bulletins, and memoranda, describing or pertaining to the handling of disability claims"); *Beckstrand v. Electronic Arts Group Long Term Disability Ins. Plan*, 2007 WL 1599769, *5 (E.D. Cal. Jun. 4, 2007) (concluding that after *Abatie*, discovery was permissible where it would not have been prior to *Abatie*); *Harper v. Unum Life Ins. Co. of Am.*, 2007 WL 1792004,

*5 (E.D. Cal. Jun. 19, 2007) (holding that the plaintiff was entitled to discovery aimed at the structural conflict of interest issue rather than the merits, and permitting discovery going to the compensation of Defendant's in-house medical personnel); *Groom v. Standard Ins. Co.*, 492 F.Supp. 2d 1202, 1205 (C.D. Cal. 2007); *Gullidge v. Hartford Life & Acc. Ins. Co.*, —F.Supp. 2d—, 2007 WL 2362912, *2 (C.D. Cal. Aug. 13, 2007) (holding hours expended on discovery were reasonable because, under *Abatie* and *Welch*, "[s]ome discovery regarding whether a conflict of interest existed is therefore appropriate if the plaintiff plans to raise the issue of conflict of interest at trial, which Plaintiff in this case apparently did."); *Alvarez v. Unum Life Ins. Co. of Am.*, 2007 WL 2348737, *7 (N.D. Cal. Aug. 14, 2007) (granting Plaintiff's request for discovery).

Moreover, that the plan itself is self-funded matters not in the court's *Abatie* inquiry. As noted by the concurrence in *Abatie*, where Judges Kleinfeld and Rawlinson stated:

> A so-called independent administrator may have much more of an incentive to decide against claimants than an insurance company spending "its own money." Independent administrators may want to show how tough they are on claims to better market their services to self-insured employer.

*Id*. at 977. Plaintiff contends that Sedgwick has a financial incentive to deny claim and that discovery will demonstrate its financial conflict of interest. "[A]n ERISA plaintiff no longer needs to prove an actual conflict of interest before a court may take into account any potential conflict of interest in reviewing the administrator's decision." *Groom*, 492 F. Supp. 2d at 1204; *see also Abatie*, 458 F.3d at 967. There is no requirement that Plaintiff proffer smoking gun evidence of a conflict in order to get discovery. Plaintiff intends to serve written discovery and to take not more than four depositions of individuals who are familiar with the above issues.

<u>Defendant's Position</u>

Plaintiff will not be able to demonstrate that there is a conflict of interest warranting a heightened standard of review. In the post-*Abatie* era, Courts in the Ninth Circuit have faced the question of whether *Abatie* specifically granted plaintiffs the right to discovery.

*Compare Groom v. The Standard Insurance Co.*, 492 F. Supp. 2d 1202, 2007 U.S. Dist. LEXIS 48375 (C.D. Cal 2007) (concluding that *Abatie* did not grant ERISA plaintiffs discovery) *with Baldoni v. UNUMProvident* 2007 U.S. Dist. LEXIS 14127 (D. Or. 2007) (holding that "*Abatie* does not disturb this district's practice to limit conflict of interest discovery and determine whether to allow it on a case-by-case basis.")  What the Courts do agree on, however is that any right to discovery is narrowly limited to evidence related to a *conflict of interest.  Id.*; *see also Shemano-Krupp* v. *Mutual of Omaha Ins. Co.,* 2006 U.S. Dist. LEXIS 84352 at * 30-31 (N.D. Cal. 2006) (refusing discovery on the grounds that requested discovery would not demonstrate the existence of a conflict of interest).  As the *Abatie* Court explained *if* (and only if) a conflict of interest exists, *then* "that conflict must be weighed as a 'facto[r]' in determining whether there is an abuse of discretion."  458 F.3d at 965 (citing *Firestone*, 489 U.S. at 115 (internal citations omitted)).  Accordingly, the first step in determining whether discovery is appropriate is determining the existence of a conflict of interest.  As Plaintiff cannot demonstrate a conflict of interest, discovery should be denied.

In determining a conflict of interest, the *Abatie* Court was particularly concerned about a situation when "a plan administrator (which acts as a fiduciary toward the plan participants, who are beneficiaries) is also the sole source of funding for an unfunded plan." *Id. at* 965, n.5. Concluding that there is an inherent conflict under such circumstances is not surprising.  As the Ninth Circuit explained, "on the one hand, such an administrator is responsible for administering the plan so that those who deserve benefits receive them.  On the other hand, such an administrator has an incentive to pay as little in benefits as possible to plan participants because the less money the insurer pays out, the more money it retains in its own coffers." *Id.* at 965-966.  Similarly, Courts are inclined to find a structural conflict when an insurance company issues a policy *and* administers whether claims should be granted under this same policy.  *See e.g., Lang v. Long-Term Disability Plan of Sponsored Applied Remote Tech.*, 125 F.3d 794, 797 (9th Cir. 1997).  In *Lang*, the Court explained that a conflict is triggered by "the dual role as both funding source and administrator of the Plan." *Id.* (citing *Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1561 (11th Cir. 1990)

(because an insurance company pays a beneficiary from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business). These are not our facts. Rather, the independence between the fiduciary - decision maker and the funding sources in this case is demonstrated by the fact, among others, that AT&T Inc., the Plan Administrator, has delegated the entire claims review process for disability claims` under the Plan to an independent third party Claims Administrator, Sedgwick Claims Management Service, Inc. ("Sedgwick"). Sedgwick operates without a business incentive to approve or deny the claims, and does not fund the payment of claims. In the absence of any evidence of a conflict of interest, discovery is properly denied.

9. <u>Class Actions:</u>

N/A

10. <u>Related Cases:</u>

None.

11. <u>Relief:</u>

Plaintiff is seeking to recover the following relief:

a. Past-due short-term disability benefits of approximately $35,520, plus pre-judgment interest. Ms. Rios was entitled to disability pay for 26 weeks at full pay and 26 weeks at half pay. She was out of work due to disability for approximately 48 weeks and earned $24 per hour at 40 hours per week;

b. Attorneys' fees and costs of suit.

Defendant contends that Plaintiff is not entitled to disability benefits or damages in any amount.

12. Settlement and ADR:

The parties have not agreed to any form of ADR. On May 20, 2008, the parties filed a Notice of Need for ADR Phone Conference pursuant to ADR L.R. 3-5 d.

13. Consent to Magistrate Judge for All Purposes:

The parties do not consent to a magistrate judge.

14. Other References:

The case is not is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. Narrowing of Issues:

The parties reserve decision on whether the narrowing of issues can be achieved.

16. Expedited Schedule:

The parties have not agreed to an expedited schedule.

17. Scheduling:

Plaintiff proposes the following schedule:

Fact discovery to be completed by October 8, 2008;

Dispositive motions to be filed so as to be heard no later than March 12, 2009;

Pretrial conference on May 5, 2009;

2-day bench trial starting May 25, 2009.

18. Trial:

The parties believe the matter will require a 1 to 2 day bench trial.

19. <u>Disclosure of Non-party Interested Entities or Persons:</u>

The parties have filed the "Certification of Interested Entities or Persons."

20. <u>Such other matters as may facilitate the just, speedy, and inexpensive disposition of this matter.</u>

None.

Dated: June 3, 2008                     Respectfully submitted,

SPRINGER-SULLIVAN & ROBERTS LLP

By: /S/
Michelle L. Roberts
*Attorneys for Plaintiff Soccoro Rios*

Dated: June 3, 2008

MILLER LAW GROUP

By: /S/
Katherine L. Kettler
*Attorneys for Defendant
AT&T Umbrella Benefit Plan No. 1*